UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
••••••••••••••••••••••••••••••••••••••••••••••••••••

**Lizamaris Delarosa,**

**Plaintiff,**

**-v-**                                    **1:11-CV-368 (NAM/CFH)**

**United States of America, AUSA Craig Nolan,
ATF S/A Thomas M. Jusianiec, and T.F.O.
Thomas McCoy,**

**Defendants.**

••••••••••••••••••••••••••••••••••••••••••••••••••••

APPEARANCES:

Lizamaris Delarosa
Plaintiff, *pro se*

Hon. Richard S. Hartunian, United States Attorney
Charles E. Roberts, Esq., Assistant United States Attorney
100 South Clinton Street
Syracuse, New York 13261
Attorney for Defendants

**Hon. Norman A. Mordue, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In this *pro se* action, defendants move (Dkt. No. 28) to dismiss the amended complaint

(Dkt. No. 18) pursuant to Fed.R.Crim.P. 12(b)(1) and 12(b)(6) for failure to state a claim,

prosecutorial immunity, qualified immunity, sovereign immunity, and lack of standing. As set

forth below, the Court grants dismissal in part and denies it in part.

### BACKGROUND

This action stems from the federal investigation and prosecution of plaintiff's husband

Noel Delarosa for his participation in a drug trafficking conspiracy in violation of 21 U.S.C. §§

841 and 846. *See United States v. Delarosa*, 1:09-CR-64 (D.Vt.). The Court takes judicial notice of the public records in that case. On June 16, 2010, the third superseding indictment was filed, charging Noel Delarosa with conspiracy to distribute 5000 grams or more of cocaine and 100 kilograms or more of marijuana. *Id*. at Dkt. No. 335. On May 17, 2011 the jury returned a verdict of guilty, *see id.* at Dkt. No. 795, and on October 17, 2011 the court sentenced him to 300 months imprisonment and forfeiture of assets including a 2004 Cadillac Escalade SUV. *See id.* at Dkt. Nos. 1092, 1103, and 1105; *see also United States v. Noel Delarosa*, 2012 Wl 3778855 (D.Vt. Aug. 30, 2012) (denying defendant's motion for judgment of acquittal or new trial).

Meanwhile, on April 4, 2011, plaintiff filed the complaint in the instant action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80.[1] In response to plaintiff's initial complaint, defendants moved to dismiss for failure to state a claim (Dkt. No. 12). Instead of opposing the motion, plaintiff moved to amend the complaint (Dkt. No. 14). On December 17, 2011, United States Magistrate Judge David R. Homer granted the motion (Dkt. No. 17).

Plaintiff's complaint (Dkt. No. 1), motion to amend the complaint (Dkt. No. 14), amended complaint (Dkt. No. 18), and opposition (Dkt. No. 19) to defendants' dismissal motion set forth factual allegations regarding defendants' alleged wrongful conduct during the

---

[1] A plaintiff bringing a *Bivens* claim must allege violation of his or her constitutional rights by a federal agent acting under color of federal authority. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). Federal courts generally apply to *Bivens* cases the law applicable to actions under 42 U.S.C. § 1983. *See Hartman v. Moore*, 547 U.S. 250, 255, n.2 (2006); *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir.1995).

Under the FTCA, a suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1); *see Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991).

investigation and prosecution of her husband Noel Delarosa. Plaintiff alleges that between January 2010 and May 2010, defendants Special Agent Thomas M. Jusianiec ("Jusianiec") and Task Force Officer Thomas McCoy ("McCoy") "disclosed sensitive information" about Noel Delarosa (apparently, they disclosed that he was a confidential informant for the Government) that put plaintiff and her children in danger. She further alleges that after he was informed of this conduct, Assistant United States Attorney Craig Nolan ("Nolan") did nothing to stop it.

The amended complaint claims that in May 2010, plaintiff and her husband "discovered an ongoing audio CD that exposes Outrageous Conduct by defendants." Plaintiff states that on the CD, defendants "make discriminatory statements and other illegal activities involving human and civil rights violations planned to be committed by the defendants" including "planning on assaulting an unknown individual."

On June 15, 2010, plaintiff's husband's attorney Donald T. Kinsella, Esq. sent a letter to United States Attorney Richard Hartunian of the Northern District of New York, concerning the CD and other matters. In the letter, attached to plaintiff's papers in opposition to dismissal (Dkt. No. 19), Attorney Kinsella states that he represents Noel Delarosa; that Mr. Delarosa has been cooperating with the Drug Enforcement Administration in Albany; that federal agents have been investigating allegations that Mr. Delarosa was actively involved in a Vermont-based drug trafficking conspiracy in violation of his cooperation agreement; and that it appears that in interviewing people in the course of the investigation, the agents have been disclosing Mr. Delarosa's cooperation with the Government. Attorney Kinsella writes: "We only ask that your office caution NDNY based agents that they should be careful not to put anyone, whether they are witnesses, informants or defendants, into situations in which they will be exposed to injury or

death in retaliation for perceived cooperation with the government, or for any other reason." The letter further states that three search warrant applications presented to Magistrate Judge Homer in the Northern District of New York were based on an affidavit by Jusianiec; that Attorney Kinsella has compared the affidavit to the contents of conversations recorded by a device given by the ATF agents to a confidential informant on January 23, 2009; that the conversations were recorded when the informant returned the recording device, which was still turned on, to the agents; that the device recorded "the subsequent goings on amongst the informant and the agents and later between the agents themselves back in their office"; and that the contents of the recording raise credibility issues regarding Jusianiec's affidavit (apparently this is the CD to which plaintiff refers). The letter concludes: "We believe that it is appropriate to bring this matter to your attention so that your duty AUSA will be careful not to present information to Judge Homer that is inaccurate or worse." Plaintiff alleges that, in response to this letter, defendants "launched a criminal vendetta against the Plaintiff and the Plaintiff's family," including "false statements, illegal seizures and harassment."

On August 29, 2010, Jusianiec and McCoy seized the 2004 Cadillac Escalade from plaintiff's property. Ultimately the vehicle was forfeited in the criminal prosecution of plaintiff's husband. Plaintiff claims the seizure was legally unjustified.

Plaintiff also claims that, during the course of the seizure of the 2004 Cadillac Escalade on August 29, 2010, Jusianiec and McCoy violated her rights. She alleges that they knocked on the door of her residence and requested the keys to the vehicle; that when she requested documentation of their right to seize it, they became "aggressive" and threatened to seize her other vehicle as well; that they stated: "[Y]ou're not going anywhere until you give us the keys";

-4-

that they attempted to interrogate her regarding her husband; that they did not leave until a truck removed the vehicle; and that they remained at her residence "holding her against her own free will ... [for] approximately 30 to 45 minutes." Thereafter, between August 29, 2010 and September 20, 2010, they "have been stalking, following and putting the Plaintiff's family in great danger."

The amended complaint claims that on September 20, 2010, defendants Jusianiec and McCoy came to plaintiff's place of business, a store located at 855 Crane Street, Schenectady, New York. It does not appear whether plaintiff has a legal interest in the business. In her opposition to the dismissal motion, plaintiff alleges the following regarding this incident:

> [D]efendants Thomas M. Jusianiec and Thomas E. McCoy along with an unknown individual surprisingly appeared at Plaintiff's place of business "Fly to the Limit" clothing store/barber shop located at 855 Crane St, Schenectady, New York. Defendants walked in the business uninvited and defendant Thomas E. McCoy along with the unknown individual stood at the door of the entrance to the business while defendant Thomas M. Jusianiec approached plaintiff while she was with her new born son. Plaintiff immediately told defendants to leave her alone. Thomas M. Jusianiec started disrespecting Plaintiff in front of her son, and when plaintiff was attempting to leave with her son, Thomas M. Jusianiec stated "you are not going anywhere until you answer my questions." Plaintiff told Jusianiec that she knows that this is about the audio CD, and Plaintiff also told Jusianiec "I know you are corrupt and soon every one is going to know."

According to plaintiff, the encounter lasted for 30 to 45 minutes. Plaintiff's amended complaint alleges: "The defendants were armed and stood by the door of the front entrance of the store. The defendants made the plaintiff feel as if she was not free to end the encounter and make business sells [*sic*] until their questions were answered." Plaintiff claims that on October 7, 2010 she filed a complaint with the Federal Bureau of Investigation in Albany and Vermont, and with the Attorney General in Washington, D.C. She does not attach copies of these documents.

-5-

The amended complaint further alleges that on February 1, 2011, Jusianiec and McCoy again entered plaintiff's place of business at 855 Crane Street. Plaintiff, who apparently was not present at the time of the incident, states:

> On or about February 1st, 2011, defendants Thomas M. Jusianiec, Thomas McCoy and a 3rd unknown individual appeared at the Plaintiff's business located at 855 Crane St, Schenectady, New York and impersonated themselves to be Code Enforcement Officers who worked for the city of Schenectady to get access inside of the store. When an individual by the name of Carlos Ruiz who at the time was working at the store asked the defendants who they were, the defendant's advised Mr. Ruiz that they were Code Enforcement Officers who worked for the city of Schenectady, and were there to take measurements of the store. After illegally gaining access to the basement and inside of the entire store, the defendants began recording and or taking pictures of all the items in the store to include all the items in the basement.

Plaintiff also alleges that in March 2011, Nolan, Jusianiec, and McCoy attempted to persuade Dawn Schiavone, the mother of one of Noel Delarosa 's codefendants, to wear a recording device and converse with plaintiff in an effort to incriminate plaintiff. The allegations are as follows:

> On or about March of 2011, the defendants AUSA Craig Nolan, TFO Thomas McCoy and ATF agent Thomas M. Jusianiec interviewed Ms. Dawn Schiavone who is the mother of John Orlando Brooker a defendant involved in the United States v. Delarosa, Brooker case et al. (also see United States v. Brooker) while the defendant's were conducting their interview, Ms. Dawn Schiavone was recording the conversation between the defendants and herself. According to the audio recording provided by Ms. Schiavone, you clearly hear the defendants requesting that she call the Plaintiff in regards to her son (Brooker) wanting to plead guilty. The defendants had Ms. Schiavone believe that the reason her son at the time had not plead guilty was because the Plaintiff may have threatened to hurt Brooker and or his family if he were to plead guilty and not go to trial. According to Ms. Schiavone who may be a witness at trial, the defendants provided her with an audio recording device and requested that she call the Plaintiff and have the plaintiff somehow incriminate herself through an audio recorded conversation in a way that would have lead to the defendant AUSA Craig Nolan filing criminal charges against the Plaintiff. The defendant's also advised Ms. Schiavone that if she

were to help them accomplish their goal, they would work a much better plea
deal with her son John Brooker.

Plaintiff does not allege that Ms. Schiavone ever actually participated in recording a conversation

with plaintiff or that plaintiff was otherwise harmed by defendants' conduct in this respect.

Plaintiff claims that defendants have illegally detained her; subjected her to humiliation,

intimidation and harassment; seized her vehicle; deprived her of due process and equal protection;

and invaded her privacy. Plaintiff requests that the vehicle be returned to her, that defendants "be

arrested and prosecuted for the crimes they've committed against the Plaintiff," and that

defendants pay her $2.5 million in damages.

## DISCUSSION

### Standard on Dismissal Motion; Leave to Amend

To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to

relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.

2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must

provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a

right to relief above the speculative level.'" *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d

87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555). The court must accept as true all factual

allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See ATSI*,

493 F.3d at 98. A complaint should be "especially liberally construed when it is submitted *pro se*

and alleges civil rights violations." *See Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008)

(citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). The submissions of a *pro se*

litigant should be interpreted "to raise the strongest arguments that they suggest." *Triestman v.*

*Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted).

The Second Circuit instructs that a *pro se* complaint is to be read liberally, and that a court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Leave to amend, however, is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.*

**Disclosure of Information**

As against Jusianiec and McCoy, plaintiff states no viable claim based on the allegations that they disclosed "sensitive information" regarding her husband's role as an informant and that defendants stated that her husband was having an affair. At most, these allegations might support a claim by the husband, perhaps for slander, but plaintiff has no standing to assert such a claim. To the extent that plaintiff seeks to base a cause of action on these allegations, any such claim is substantively deficient. Better pleading will not cure it. Thus, any such claim is dismissed without leave to replead.

**Forfeiture**

Regarding the seizure and forfeiture of the 2004 Cadillac Escalade on August 29, 2010, plaintiff asserts a Fourth Amendment and/or Due Process Clause claim that the Government lacked the legal right to deprive her of her interest in the vehicle. According to plaintiff, the vehicle was in fact hers, not her husband's or her father-in-law's (in whose name it was registered, *see* Dkt. No. 19, p. 15), and the seizure and forfeiture were illegal. The Government's right to seize and forfeit the vehicle has already been adjudicated in the context of the forfeiture proceeding in the criminal prosecution of plaintiff's husband. *See United States v. Noel*

*Delarosa*, 1:09-CR-64 (D.Vt.) (Dkt. Nos. 1092, 1105). In fact, plaintiff attaches to her papers the "Notice of Forfeiture Proceedings" she received in that proceeding. This Court has no authority to review the propriety of the forfeiture decision of the Vermont District Court. A judgment in plaintiff's favor on this issue would necessarily imply the invalidity of the forfeiture aspect of Noel Delarosa's sentence and thus is barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See Rashid v. United States*, 205 Fed.Appx. 952, 953 (3d Cir. 2006) ("[T]he order of criminal forfeiture is part of Rashid's sentence.... Consequently, a judgment in Rashid's favor would necessarily imply the invalidity of his sentence); *Tavarez v. Reno*, 54 F.3d 109-10 (2d Cir. 1995) (applying *Heck* in a *Bivens* action). The claim is dismissed without leave to replead.

**Detention at Home During Seizure**

Plaintiff also bases a Fourth Amendment claim on the conduct of Jusianiec and McCoy in the course of seizing the 2004 Cadillac Escalade. She alleges that they knocked on the door of her residence and requested the keys to the vehicle; that when she requested documentation of their right to seize it, they became "aggressive" and threatened to seize her other vehicle as well; that they stated: "[Y]ou're not going anywhere until you give us the keys"; that they did not leave until a truck removed the vehicle; and that the total amount of time defendants were at plaintiff's residence "holding her against her own free will was ... approximately 30 to 45 minutes." The elements of a Fourth Amendment claim for arrest without probable cause are the same as the elements of a claim for false arrest under state law, *i.e.*, "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (citation omitted). There is no requirement that an

arrest be "in any sense formal." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (citation omitted). Rather, when an officer "even briefly detains an individual and restrains that person's right to walk away, he has effected a seizure and the limitations of the Fourth Amendment become applicable." *Id*. at 97. Viewed in the light most favorable to plaintiff, her allegations are sufficient to state a plausible claim. Dismissal of this claim is denied.

**Detention at Store**

Plaintiff also bases a Fourth Amendment claim on the conduct of Jusianiec and McCoy in questioning her at her place of business on September 20, 2010. In opposition to the dismissal motion, plaintiff alleges that Jusianiec and McCoy and a third unknown individual appeared at her place of business at 855 Crane Street; that they were armed; that McCoy and the third man stood at the door while Jusianiec attempted to question her; that Jusianiec stated: "you are not going anywhere until you answer my questions"; and that they made plaintiff feel "as if she was not free to end the encounter and make business sells [*sic*] until their questions were answered." Plaintiff told Jusianiec that she knows that "this is about the audio CD" and stated: "I know you are corrupt and soon every one is going to know." Viewed most favorably to plaintiff, these allegations are sufficient to make out a claim that defendants intended to confine plaintiff; that plaintiff was conscious of the confinement; and that plaintiff did not consent to the confinement. These allegations suffice to state a plausible Fourth Amendment claim that Jusianiec and McCoy arrested plaintiff without legal justification. Dismissal of this claim is denied.

**Search of Store**

The amended complaint further alleges that on February 1, 2011, Jusianiec and McCoy and a third officer entered plaintiff's place of business at 855 Crane Street on a second occasion.

Plaintiff states that Jusianiec and McCoy "impersonated themselves to be Code Enforcement Officers who worked for the city of Schenectady to get access inside of the store." She adds: "After illegally gaining access to the basement and inside of the entire store, the defendants began recording and or taking pictures of all the items in the store to include all the items in the basement." Plaintiff does not allege that she was present in the store at the time. Because plaintiff was not present, she has no Fourth Amendment claim based on Jusianiec's and McCoy's alleged improper entry into the non-public areas of the store unless she has a legally cognizable interest in the property itself such as would support a claim in the nature of trespass. Although she alleges no actual damages, such a claim may support an award of nominal damages. Plaintiff's interest in the property cannot be determined on this motion. Dismissal is denied.

**Attempt to Record Conversation**

Plaintiff alleges that in March 2011, Nolan, Jusianiec, and McCoy attempted to persuade Dawn Schiavone, the mother of one of Noel Delarosa 's codefendants, to wear a recording device and converse with plaintiff in an effort to incriminate plaintiff. Plaintiff does not allege that Ms. Schiavone ever actually participated in recording a conversation with plaintiff; to the contrary, the amended complaint alleges that Ms. Schiavone recorded defendants' attempt to gain her cooperation and that she then provided the recording to plaintiff. A governmental official's effort to obtain a person's voluntary consent to record a conversation is not in itself a constitutional violation. *See* 18 U.S.C. § 2511(2)(c); *Taplin v. Rabideau*, 2008 WL 2559374, *12 (N.D.N.Y. June 23, 2008) ("The Fourth Amendment does not prohibit law enforcement officials from recording conversations as long as one party voluntarily consents to it."). Even accepting that defendants attempted to coerce Ms. Schiavone into recording a conversation with plaintiff,

plaintiff can have suffered no harm, inasmuch as no such recording was actually made. The attempt does not, in itself, infringe a constitutional right of plaintiff's, nor does it otherwise support a cause of action by plaintiff. Better pleading will not cure the deficiencies in this cause of action; therefore, any claim directly based on this alleged attempt is dismissed without leave to replead.

**Retaliation**

Plaintiff asserts a First Amendment retaliation claim. The Court here discusses only the retaliation claim against Jusianiec and McCoy; her retaliation claim against Nolan is discussed in a separate section, *infra*. Where, as here, a private citizen claims that public officials retaliated against her for criticizing them, the plaintiff must show: that she exercised an interest protected by the First Amendment; that defendants' actions were motivated or substantially caused by her exercise of that right; and that as a result plaintiff suffered an "actual chill" in her speech or some other cognizable injury. *See Zherka v. Amicone*, 634 F.3d 642, 644-45 (2d Cir. 2011).

Plaintiff claims that Jusianiec and McCoy retaliated against her and her husband after learning of the June 15, 2010 letter from Attorney Kinsella to United States Attorney Hartunian. Even assuming that Jusianiec and McCoy were made aware of the letter, the letter cannot constitute an exercise by plaintiff of any First Amendment right. The letter is written on behalf of Noel Delarosa by his attorney. Thus, it can only constitute an exercise of Noel Delarosa's free speech right, not plaintiff's. Plaintiff lacks standing to assert a claim against defendants stemming from her husband's exercise of his right to free speech.

The only alleged incident that could constitute an exercise of a First Amendment right by plaintiff is the September 20, 2010 incident, when Jusianiec and McCoy came to her place of

-12-

business, and she told them she knows that "this is about the audio CD," and "I know you are corrupt and soon every one is going to know." Assuming that these statements amount to protected speech, the only actions by Jusianiec and McCoy that may be considered to be retaliatory are those occurring after plaintiff made the statements on September 20, 2010. Plaintiff alleges that defendants searched the store in the guise of Code Enforcement officers on February 1, 2011, and otherwise repeatedly entered the store and parked their vehicle near the store, harassing her and intimidating and deterring customers, until ultimately plaintiff had to close the business. They also allegedly attempted to persuade Dawn Schiavone to wear a recording device and converse with plaintiff in an effort to incriminate plaintiff occurred in March 2011. Although it does not appear that Ms. Schiavone actually participated in recording a conversation, and plaintiff does not allege any damages from defendants' effort to persuade her to do so, this alleged event may be considered in combination with the alleged repeated harassment at the store as constituting retaliatory conduct.

As for whether plaintiff has sufficiently pleaded that defendants acted from a retaliatory motive, the Court notes that evidence of such a motive "may include expressions by the officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995). The allegations in the amended complaint are sufficient in this respect.

In considering the chilling requirement, the Court notes that, "[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citation omitted)

(finding no chilling effect where the plaintiff continued to publish his newspaper criticizing village government). In limited contexts, however, "other forms of harm have been accepted in place of this 'actual chilling' requirement." *Zherka*, 634 F.3d at 645. As the Second Circuit explains, "a requirement that plaintiffs allege 'actual chilling' ensures an identified injury to one's right to free speech is established." *Id*. "Where chilling is not alleged, other forms of tangible harm will satisfy the injury requirement, since 'standing is no issue whenever the plaintiff has clearly alleged a <u>concrete</u> harm independent of First Amendment chilling.'" *Id*. at 646 (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004)) (emphasis in *Zherka*). Plaintiff does not allege actual chilling. Nor does she appear to allege concrete harm, unless she can show a tangible injury to some interest she holds in the store, arising from conduct by Jusianiec and McCoy in retaliation for her September 20, 2010 statements. Viewed in light of plaintiff's *pro se* status, her amended complaint adequately alleges such harm. Plaintiff's retaliation claims against Jusianiec and McCoy are sufficient to withstand dismissal.

**Equal Protection**

The Equal Protection Clause requires that "all persons similarly situated should be treated alike." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted). Plaintiff's claim appears to be a selective enforcement claim, that is, a claim that defendants investigated her more vigorously than they investigated the average citizen, and that they did so for an impermissible purpose, that is, for the purpose of retaliating against her for exercising her First Amendment rights. *See id.*; *Brown v. City of Syracuse*, 673 F.3d 141, 151-52 (2d Cir. 2012). In particular, she refers to defendants' efforts to persuade Ms. Schiavone to record a conversation with plaintiff. Although plaintiff does not appear to plead any injury from this conduct, if she can

prove a constitutional violation, she may recover nominal damages. *See Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998) ("Nominal damages are available in actions alleging a violation of constitutionally protected rights, even without proof of any actual injury."). The amended complaint is sufficient to state a plausible equal protection claim against Jusianiec and McCoy. Because the viability of the claim depends on a retaliatory purpose, the claim fails against Nolan, as discussed below.

**Due Process**

In support of her claim that defendants Jusianiec and McCoy violated her rights under the Due Process Clause of the Fifth Amendment, plaintiff relies on the allegations that Jusianiec and McCoy drove her out of business by repeatedly, systematically, and intentionally entering the store, searching the store, sitting in their vehicle near the store, and otherwise intimidating and deterring customers. *See Chalfy v. Turoff*, 804 F.2d 20, 22 (2d Cir. 1986) ("[A] true pattern of harassment by government officials may make out a section 1983 claim for violation of due process of law"); *Bertuglia v. City of N.Y.*, 839 F.Supp.2d 703, 719 (S.D.N.Y. 2012) ("While a plaintiff ... may state a due process claim for a systematic pattern of harassment by government officials that is designed to destroy the plaintiff's business, these claims are difficult to maintain."). Among other things, plaintiff will be required to show a legally cognizable interest in the business. At this early stage of the case, plaintiff's allegations are sufficient to state a plausible due process claim.

***Bivens* Conspiracy**

To state a claim for a *Bivens* conspiracy, plaintiff must allege an agreement to act in concert to inflict an unconstitutional injury and an overt act done in furtherance of that goal

-15-

causing damages.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (addressing a section 1983 conspiracy under 42 U.S.C. § 1983); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).  Plaintiff's allegations are sufficient to state a plausible claim that Jusianiec and McCoy engaged in such a conspiracy.

**Qualified Immunity**

Defendants seek dismissal on the ground that they are entitled to qualified immunity. Government officials performing discretionary functions enjoy a qualified immunity shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.  *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Here, the remaining causes of action include claims that Jusianiec and McCoy twice arrested plaintiff without justification, trespassed on her property, conspired to violate her constitutional rights, purposefully drove her out of business, and retaliated against her for exercising her right to free speech.  If plaintiff's version of events is accepted as true, Jusianiec and McCoy could not reasonably have believed that engaging in such conduct was consistent with plaintiff's rights.  Questions of fact as to whether defendants engaged in these activities bar dismissal on the ground of qualified immunity.

**Claims Against Assistant United States Attorney Craig Nolan**

Defendants argue that all claims against Assistant United States Attorney Nolan in his individual capacity must be dismissed on the ground of prosecutorial immunity.  It is not necessary, however, to address the question of immunity, because plaintiff has failed to set forth facts alleging any actionable conduct on the part of Nolan, nor has she alleged that she sustained any damages resulting from Nolan's conduct.  The Court has considered plaintiff's allegations in

her complaint (Dkt. No. 1), her motion to amend the complaint (Dkt. No. 14), her amended complaint (Dkt. No. 18), and her papers (Dkt. No. 19) in opposition to defendants' dismissal motion, and interprets them most liberally in plaintiff's favor. Plaintiff's principal allegation against Nolan is that he failed to prevent Jusianiec and McCoy from disclosing "sensitive information." This does not state a claim. Plaintiff also suggests that Nolan was involved in the attempt to enlist Ms. Schiavone to record a conversation with plaintiff. Even if this is true, the allegations regarding Ms. Schiavone do not in themselves state a claim, as discussed above. The only other possible claims against Nolan are a First Amendment retaliation claim and an Equal Protection Clause selective enforcement claim. Plaintiff alleges no exercise of a First Amendment right that involves Nolan. The June 15, 2010 letter from Attorney Kinsella is addressed only to United States Attorney Hartunian. Even assuming that Nolan was aware of the letter, the letter concerns only plaintiff's husband, makes no mention of plaintiff, and does not implicate Nolan in any misconduct. The only other possible protected activity by plaintiff is her statement to Jusianiec and McCoy when they came to her place of business on September 20, 2010 that she "knows that this is about the audio CD," and "I know you are corrupt and soon every one is going to know." This statement is not connected with Nolan in any manner. Plaintiff's allegations do not support a plausible claim against Nolan for retaliation or a claim that he selectively investigated her for a retaliatory purpose. Nor does she set forth allegations supporting a plausible claim that Nolan engaged in a conspiracy with Jusianiec and/or McCoy. All claims against Nolan are dismissed.

**Sovereign Immunity**

All plaintiff's claims against Nolan, Jusianiec and McCoy in their official capacities are

barred by the doctrine of sovereign immunity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509-10 (2d Cir. 1994). The Court has already held that plaintiff states no claim against Nolan. She may, however, proceed against Jusianiec and McCoy in their individual capacities.

Additionally, sovereign immunity bars plaintiff's claims against the United States, except to the extent that her amended complaint alleges tortious acts committed by the two remaining individual defendants, Jusianiec and McCoy, acting within the scope of their employment. With exceptions, the United States has waived sovereign immunity for such claims. *See* FTCA, 28 U.S.C. §§ 1346, 2671-80; *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). It appears that some of plaintiff's claims, such as her false arrest claims based on Jusianiec's and McCoy's conduct, may be brought against the United States. *See* 28 U.S.C. § 2680(h). Defendants argue that plaintiff has failed to comply with the FTCA's administrative exhaustion requirement. 28 U.S.C. § 2675(a); *see Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004). The exhaustion issue cannot be determined on this record. Thus, the United States remains in the case as a defendant.

## CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 28) to dismiss the amended complaint (Dkt. No. 18) is granted to the extent that the following claims are dismissed without leave to replead:

- any claim based on the allegations that defendants disclosed "sensitive information" regarding plaintiff's husband's role as an informant and stated that her husband was having an affair;

- plaintiff's Fourth Amendment and/or Due Process Clause claim that the Government lacked the legal right to deprive her of her interest in the 2004 Cadillac Escalade on August 29, 2010;

- any claim directly based on plaintiff's allegation that in March 2011, defendants attempted to persuade Dawn Schiavone, the mother of one of Noel Delarosa 's codefendants, to wear a recording device and converse with plaintiff in an effort to incriminate plaintiff;

- all claims against Thomas M. Jusianiec and Thomas McCoy in their official capacities; and

- all claims against Assistant United States Attorney Craig Nolan;

and it is further

ORDERED that the motion to dismiss the amended complaint is otherwise denied; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Date:   May 24, 2013
        Syracuse, New York

_____
Honorable Norman A. Mordue
U.S. District Judge